**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

MICHELLE B.,[1]

                    Plaintiff,

    v.

MARTIN J. O'MALLEY,[2]
Commissioner of the Social Security Administration,

                    Defendant.

Case No. 3:23-cv-00111-JMK

## DECISION AND ORDER

On or about August 9, 2011, Michelle B. ("Plaintiff") protectively filed applications under Titles II and XVI of the Social Security Act,[3] alleging a disability onset date of January 15, 2011.[4]  Plaintiff has exhausted her administrative remedies and filed a

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Title II and Title XVI.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") A.R. 118–39, 142–46, 653.

Complaint seeking relief from this Court.[5]  Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for the immediate calculation and award of benefits.[6]  Plaintiff also filed a Motion for Summary Judgment.[7]  The Commissioner filed the Administrative Record as his Answer and filed a Response Brief.[8]  Plaintiff filed a Reply Brief.[9]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[10]  For the reasons discussed below, Plaintiff's request for relief at Dockets 7 and 8 is DENIED and the Commissioner's final decision is AFFIRMED.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[11] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 7 (Plaintiff's Br.).

[7] Docket 8.

[8] Docket 6 (Notice of Lodging Admin. Record); Docket 12 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record."  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[9] Docket 13 (Reply).

[10] 42 U.S.C. § 405(g).

[11] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

conclusion."[12] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[13] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[14] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[15] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[16] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[17] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[18] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the

---

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[13] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[14] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[15] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[16] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[17] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[18] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)), *superseded on other grounds by* 20 C.F.R. § 416.929(c)(3) and § 404.1529(c)(3); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[19] However, this duty exists "even when the claimant is represented by counsel."[20]

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[21]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[22]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[23]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in

---

[19] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[20] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

[21] 42 U.S.C. § 423(a).

[22] 42 U.S.C. § 1381a.

[23] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Case No. 3:23-cv-00111-JMK, *Michelle B. v. O'Malley*
Decision and Order
Page 4 of 38

significant numbers either in the region where such individual lives or in several regions of the country.[24]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[25]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[26]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[27]  The Commissioner can meet this burden in two ways:  "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2."[28]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[29]  *The ALJ determined that Plaintiff engaged in SGA in 2017 and 2019. However, the ALJ noted that there also had been continuous 12-month periods during which Plaintiff did not engage in SGA.  The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.[30]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical

---

[24] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[25] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[26] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

[27] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[28] *Tackett*, 180 F.3d at 1101.

[29] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[30] A.R. 655–56.

or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[31] *The ALJ determined that Plaintiff had the following severe impairments: anxiety disorder with panic attacks and major depressive disorder.[32]*

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[33] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ considered the "paragraph B" criteria for mental impairments and made the following determinations: Plaintiff had a moderate limitation understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace; a moderate limitation interacting with others; and a mild limitation adapting or managing herself.[34]*

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[35] Once determined, the RFC is used at both

---

[31] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[32] A.R. 656.

[33] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[34] A.R. 656–57.

[35] 20 C.F.R. §§ 404.1545(a), 416.945(a).

Case No. 3:23-cv-00111-JMK, *Michelle B. v. O'Malley*
Decision and Order
Page 6 of 38

step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[36] *The ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: remembering, understanding, and carrying out only simple instructions and tolerating no more than occasional interaction with the public. The ALJ determined that Plaintiff could respond appropriately to supervision, coworkers, and usual work situations and manage changes in a routine work setting.[37]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[38] Otherwise, the evaluation process moves to the fifth and final step.[39] *The ALJ determined that Plaintiff had no past relevant work.[40]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[41]

---

[36] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[37] A.R. 657.

[38] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[39] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[40] A.R. 662.

[41] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

*The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.*[42]

The ALJ concluded that Plaintiff was not disabled at any time from January 15, 2011, the alleged onset date, through November 8, 2022, the date of the ALJ's decision.[43]

## III.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 33 years old on the alleged disability date.[44]  From the alleged onset date through the date of the ALJ's decision, she was considered "a younger individual" (age 18–49) by the Social Security Administration.[45]  In the past, she worked as a customer service representative, a receptionist, and as an in-home caretaker, but the SSA determined her earnings record showed no definitive evidence that she engaged in this work at substantial and gainful levels.[46]  Plaintiff alleged disability due to anxiety, panic attacks, and depression.[47]

Plaintiff's claims were denied initially on November 17, 2011, and after reconsideration on May 29, 2012.[48]  On March 14, 2013, she appeared without representation and testified at a hearing before the assigned ALJ in New York, New

---

[42] A.R. 662.

[43] A.R. 663.

[44] A.R. 118.

[45] *See* 20 C.F.R. §§ 404.1563, 416.963.

[46] A.R. 324, 336–37.

[47] A.R. 119.

[48] A.R. 52–55.

York.[49]  The ALJ issued an unfavorable hearing decision on April 8, 2013.[50]  On May 27, 2014, the Appeals Council denied Plaintiff's request for review.[51]

The United States District Court for the Southern District of New York granted the parties' stipulated remand on December 4, 2014.[52]  The Appeals Council remanded the case on September 15, 2015, for the stated reason that Plaintiff's file did not contain a waiver of representation form and it was unclear from the hearing recording whether the ALJ informed Plaintiff of her right to counsel.[53]

On January 26, 2016, Plaintiff appeared and testified with representation at a second hearing before a different ALJ in New York, New York.[54]  On March 9, 2016, the ALJ issued an unfavorable decision.[55]  On March 29, 2017, the Appeals Council denied Plaintiff's request for review.[56]

On June 5, 2018, the United States District Court for the Central District of California reversed and remanded the Commissioner's final decision for further proceedings.[57]  The district court found that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the examining

---

[49] A.R. 20–35.

[50] A.R. 8–15.

[51] A.R. 1–3.

[52] A.R. 362–65.

[53] A.R. 368.

[54] A.R. 332–61.

[55] A.R. 317–26.

[56] A.R. 292–93.

[57] A.R. 721–33.

physician's opinions.[58]  The district court held that the ALJ "must reassess the evidence and provide sufficient reasons supported by the record for rejecting Dr. Kushner's opinion, if the ALJ again finds the opinion should be rejected."[59]  The Commissioner's decision was reversed and remanded for further proceedings.[60]  The Ninth Circuit disagreed with Plaintiff's assertion that the district court should have remanded for an immediate award of benefits and affirmed the district court's order.[61]

On April 14, 2022, and again on June 28, 2022, Plaintiff filed a waiver of her right to a hearing before an ALJ.  She also requested "a determination made based on the medical records already in her file."[62]

On November 8, 2022, the assigned ALJ issued an unfavorable decision pursuant to 20 C.F.R. §§ 404.948(b) and 416.1448(b).[63]  After the Appeals Council denied review on April 3, 2023, Plaintiff timely appealed to this Court.[64]

## IV.  DISCUSSION

Plaintiff is representing herself in this appeal.  The Court construes Plaintiff's appeal to raise the following issues:  (1) the ALJ failed to follow the U.S. District Court

---

[58] A.R. 728–32.

[59] A.R. 732.

[60] A.R. 733.

[61] A.R. 712–16.

[62] A.R. 826–27.

[63] A.R. 652–63.  An ALJ may decide a case on the record and not conduct an oral hearing if the claimant indicates in writing that she does not wish to appear before the ALJ at an oral hearing. *See* 20 C.F.R. §§ 404.948(b) and 416.448(b).

[64] A.R. 643–48.  Plaintiff filed her complaint on May 12, 2023. *See* Docket 1.

Order by failing to provide clear and convincing reasons for discounting Dr. Kushner's medical opinions; (2) the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom allegations; (3) the ALJ erred in finding that Plaintiff engaged in substantial gainful activity in 2017 and 2019; (4) the ALJ erred by finding that Plaintiff had no past relevant work; and (5) the ALJ failed to adequately consider Social Security Ruling 85-15.[65] Plaintiff urges the Court to remand the ALJ's decision for the immediate payment of benefits.

The Commissioner asserts that the ALJ rationally discounted Plaintiff's allegations because they conflicted with the treatment record and that the ALJ reasonably discounted Dr. Kushner's medical opinion because it was unsupported, unexplained, and at odds with the record. The Commissioner urges the Court to affirm the ALJ's decision.[66]

## A. Medical Opinion Evidence

Upon initial review of Plaintiff's claims, the reviewing agency physician found that there was insufficient evidence to evaluate Plaintiff's medically determinable mental impairment of affective disorder and the SSA determined Plaintiff was not disabled.[67] Although Plaintiff had multiple treating providers, due to limited treatment, these providers declined to evaluate Plaintiff's work limitations.[68] Dr. Kushner, a non-treating, but examining psychologist, provided functional limitations based on his evaluation on

---

[65] Docket 7 at 8–15.

[66] Docket 12 at 2–8.

[67] A.R. 40–43, 47–51.

[68] *See e.g.,* A.R. 456–62, 488, 496–98.

November 9, 2015.[69]  Therefore, Dr. Kushner's opinion is the only medical opinion providing specific functional limitations relating to Plaintiff's mental impairments.

On appeal, the U.S. District Court for the Central District of California reversed and remanded the ALJ's decision for further proceedings.  First, the district court noted that the record showed a "well-documented history of severe depression, anxiety, and panic attacks."[70]  The district court also pointed out that Dr. Kushner's opinion was the only evidence in the record that included a functional assessment.  The medical records also contain GAF scores ranging primarily between 50 and 75, with two lower scores of 34 and 47.[71]  The district court considered the higher GAF scores medical evidence contradictory to Dr. Kushner's opinion.[72]  However, the district court then concluded that the GAF scores did not contradict Dr. Kushner's opinion because "[m]ost often providers found Plaintiff's GAF score to be between 50-55,[73] which is indicative of significant impairment."[74]

---

[69] A.R. 465–71.

[70] A.R. 729.

[71] *See e.g.,* A.R. 493 (GAF score of 47 on initial assessment), A.R. 495 (GAF Score 34), A.R. 509 (GAF Score 55), 512 (GAF score of 55), 515 (GAF Score 55), 523 (GAF score of 65–70), 543 (GAF score of 65), 546 (GAF Score 50), 552 (GAF Score 50), 572 (GAF Score 52), 583 (GAF Score 50), 587 (GAF Score 50), 591 (GAF Score 52), 611 (GAF score of 55), 614 (GAF Score 55), 621 (GAF score of 65–70), 635 (GAF score of 65), 642 (GAF score of 65).

[72] A.R. 729–32.

[73] A.R. 732 n.7 ("Again, a GAF score of 50 indicates a 'serious impairment in social, occupational, or school functioning.'  DSM-IV at 34.  A GAF score between 61 and 60 describes 'moderate symptoms' or 'any moderate difficulty in social, occupational, or school functioning.'  *Id.* ").

[74] A.R. 732.

Next, the district court cited to examples of Plaintiff's reports of some improvement with medications, but also noted that Plaintiff continued to report symptoms of depression and almost daily panic attacks. The district court cited examples in the record showing that Plaintiff sometimes discontinued her treatment or failed to comply with treatment.[75] The district court found that this failure to comply is "not unusual in the mental health context and does not contradict the evidence of impairment."[76]

The district court held that it was not clear from the record that the ALJ would be required to find Plaintiff disabled after properly evaluating the evidence, in part because the record contained no evidence from a vocational expert.[77] The district court ordered the ALJ to "reassess the evidence and provide sufficient reasons supported by the record for rejecting Dr. Kushner's opinion[.]"[78]

As discussed above, after the district court ordered remand, Plaintiff elected not to appear and testify at a new hearing and elected not to submit any new medical evidence. The most recent medical evidence in the record is from February 2016, and no vocational

---

[75] A.R. 729–30.

[76] A.R. 730 (citing *Cf. Garcia v. Astrue,* No. C10-5463-RBL-JRC, 2011 WL 884126, at *18 (W.D. Wash. Mar. 14, 2011), *report and recommendation adopted* 2011 WL 888114 (W.D. Wash. Mar. 14, 2011) ("When mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that he needs his medication, or he may not realize even that his 'condition reflects a potentially serious mental illness.'" (quoting *Van Ngyuen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996)).

[77] The Court stated, "Most often providers found Plaintiff's GAF score to be between 50-55, which is indicative of significant impairment." A.R. 732. *See* A.R. 509 (GAF Score 55), 512 (GAF Score 55), 515 (GAF Score 55), 546 (GAF Score 50), 552 (GAF Score 50), 572 (GAF Score 52), 583 (GAF Score 50), 587 (GAF Score 50), 591 (GAF Score 52), 611 (GAF Score 55), 614 (GAF Score 55).

[78] A.R. 733.

expert has ever testified in this case. Therefore, the ALJ issued a decision after remand without an oral hearing and based only on the previous record, pursuant to 20 C.F.R. §§ 404.948(b) and 416.1448(b).[79]

In her brief to this Court, Plaintiff alleges that the ALJ, after remand, "failed to provide sufficient reasons supported by the record for rejecting the SSA Consultative Examiner, psychologist, Dr. Michael Kushner's opinion[.]"[80] Because Plaintiff protectively filed her applications on or about August 9, 2011, the regulations prior to March 27, 2017, are applicable here.

### 1.    Legal standard

For applications filed before March 27, 2017, the weight given to medical opinions depends on "an acceptable medical source's" relationship with the claimant.[81] A licensed psychologist is an acceptable medical source under the prior regulations.[82]

In the three-tiered hierarchy of acceptable medical sources, treating medical sources are considered the highest tier. These opinions are given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the claimant's case record."[83] An acceptable medical source who examines the claimant but does not

---

[79] A.R. 653.

[80] Docket 7 at 8.

[81] *Woods v. Kijakazi,* 32 F.4th 785, 789 n. 2 (9th Cir. 2022).

[82] *See* 20 C.F.R. § 404.1513(a)(2) (effective Sept. 3, 2013, to March 26, 2017).

[83] *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

have an ongoing medical relationship with the claimant is considered an examining source. His opinion is "entitled to greater weight than the opinion of a nonexamining physician."[84] The "lowest-weighted tier" consists of non-examining medical sources.[85] However, the opinions of non-examining medical sources may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.[86]

When a treating or examining medical source's opinion is not contradicted by other evidence, the ALJ must provide "clear and convincing reasons" for rejecting the medical opinion.[87] When contradicted, the ALJ may only reject a treating or examining medical source's opinion by providing specific and legitimate reasons that are supported by substantial evidence.[88] This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings."[89] An ALJ may reject the opinion of any medical source "if that opinion is brief, conclusory, and inadequately supported by clinical findings."[90]

Because Dr. Kushner was an examining psychologist in this case and his opinion that Plaintiff's social functioning was markedly impaired is contradicted by the GAF scores

---

[84] *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020); *see also* 20 C.F.R. § 404.1527(c)(1).

[85] *Woods,* 32 F.4th at 789.

[86] *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

[87] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[88] *Id.* at 654.

[89] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

[90] *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

in the record, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting his medical opinion.[91]  For the reasons set forth below, the ALJ provided specific and legitimate reasons for discounting certain portions of Dr. Kushner's medical opinions.

### 2.    Medical opinion of Michael Kushner, Ph.D.

On November 9, 2015, Plaintiff saw Michael Kushner, Ph.D., for a psychiatric evaluation.[92]  Dr. Kushner conducted a background history based on Plaintiff's self-reports.  On mental examination, Dr. Kushner observed that Plaintiff was cooperative, and her manner of relating, social skills, and overall presentation was adequate.  He reported that Plaintiff's speech was clear and adequate; thought processes were coherent and goal directed without evidence of hallucinations, delusions, or paranoia; her affect was depressed and mood dysthymic; her attention and concentration generally intact; her recent and remote memory skills impaired; and her intellectual function was below average.  Dr. Kushner diagnosed Plaintiff with unspecified depressive disorder and panic disorder and recommended that Plaintiff continue with her psychiatric treatment.[93]

As part of his evaluation, Dr. Kushner assessed Plaintiff's functional limitations.  He opined that Plaintiff was moderately impaired in her ability to understand and remember complex instructions, carry out complex instructions, and make judgements on complex work-related decisions.  He opined that Plaintiff was moderately to markedly impaired in

---

[91] *See Revels,* 874 F.3d at 654.

[92] A.R. 465–68.  As noted by the U.S. District Court, Central District of California, Dr. Kushner referred to the examination as a psychiatric evaluation, but he signed the evaluation as a Ph.D. in psychology.  A.R. 465, 468, 728 n.3.

[93] A.R. 465–68.

her ability to interact appropriately with the public, with supervisors, and with co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Kushner stated that his opinions regarding Plaintiff's ability to interact appropriately to persons and work situations were based on Plaintiff's self-reports of symptoms of major depression and panic disorder.[94]

"When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision."[95] Moreover, we are confined to reviewing the reasons the ALJ asserts.[96] At the same time, the court may not affirm an ALJ's decision where the ALJ "pick[ed] out a few isolated instances of improvement" to deny benefits to a claimant.[97]

Reviewing the same record as the U.S. District Court for the Central District of California, the assigned ALJ gave some weight to Dr. Kushner's opinion that Plaintiff had mild limitations in understanding, remembering, and carrying out simple instructions and in making judgments regarding simple work-related decisions and his opinion that Plaintiff's limitations were moderate if those instructions and judgments were complex. The ALJ also gave some weight to Dr. Kushner's opinion that Plaintiff was mildly limited in her ability to follow and understand simple instructions and perform simple tasks independently. The ALJ found these assessments generally consistent with the findings

---

[94] A.R. 469–71.

[95] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001).

[96] *Brown-Hunter,* 806 F.3d at 494 ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

[97] *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

in Dr. Kushner's own report and with the treatment record. The ALJ incorporated these opinions into the RFC.[98]

However, the ALJ assigned only little weight to the portion of Dr. Kushner's opinion opining Plaintiff experienced moderate to marked limitations in all aspects of her social functioning. The ALJ provided the following reasons: (1) Dr. Kushner "had a limited understanding of the overall diagnostic picture on which to form an opinion because he saw the claimant on a single occasion and reviewed no treatment notes or other records"; (2) the longitudinal evidence is not consistent with Dr. Kushner's assessment of marked limitations in all aspects of social function; (3) Dr. Kushner did not provide sufficient rationale, specific findings, or articulate the frequency and circumstances to support his assessments of marked limitations in social functioning; and (4) Dr. Kushner's "moderate to at times marked" limitations are not consistent with his other assessments of only mild limitations.[99]

### 3. Familiarity with the record

In assessing the weight of a medical opinion, the ALJ considers the extent to which the medical source is "familiar with the other information in [Plaintiff's] case record."[100] And, an ALJ may also discredit physicians' opinions that are unsupported by the record as a whole.[101] In this case, Dr. Kushner met Plaintiff on one occasion, provided a functional assessment based on a single evaluation, and did not review Plaintiff's medical

---

[98] A.R. 661.

[99] A.R. 661–62 (simplified).

[100] 20 C.F.R. § 416.927(c)(6).

[101] *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).

records.[102]    Plaintiff's treating providers declined to provide functional assessments because Plaintiff had not attended enough sessions to make an assessment.[103] Moreover, without a record review, it appears that Dr. Kushner relied heavily on Plaintiff's subjective reports, which the ALJ discounted.[104]

Therefore, the ALJ's finding that Dr. Kushner "had a limited understanding of the overall diagnostic picture on which to form an opinion" was a specific and legitimate reason to discount Dr. Kushner's marked limitations in social functioning.

### 4.    Treatment notes and Plaintiff's Global Assessment of Function (GAF) scores

An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.[105]    And, the consistency of a medical opinion with the treatment notes is a relevant factor in the ALJ's evaluation of that opinion.[106]    However, an ALJ may not "cherry pick" evidence to discount a medical opinion.[107]

Contrary to Plaintiff's assertion, the ALJ did not cherry-pick the evidence in this case.    Instead, the ALJ found Plaintiff's anxiety disorder with panic attacks and major

---

[102] A.R. 465–71.

[103] *See e.g.,* A.R. 456–62, 488, 496–98.

[104] A.R. 470.  *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (citations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

[105] *Batson v. Comm'r of Soc. Sec. Admin.,*359 F.3d 1190, 1195 (9th Cir. 2004).

[106] *See Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014); *Orn,* 495 F.3d at 631.

[107] *Ghanim,* 763 F.3d at 1164.

depressive order to be severe based on the longitudinal record.[108]  However, the ALJ also pointed to treatment records indicating that Plaintiff's mental status examinations at her mental health appointments conflicted with Dr. Kushner's marked limitations.[109]

The Court's review of the record shows that Plaintiff was alert, cooperative, calm, with normal speech, and with normal psychomotor activity at mental health appointments and upon examination by Dr. Kushner.[110]  Moreover, the ALJ considered Plaintiff's GAF scores and afforded them some weight.  However, the ALJ found that the scores did not "reflect specific functional limitations," did not suggest more than a moderate level in overall function, and were "consistent across several months of treatment."[111]

Based on the record in this case, the Court agrees.  First, "[a] GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."[112]  However, GAF scores alone do not necessarily provide guidance for determining functional limitations.[113]  Moreover, two GAF scores under 50 without further explanation is not necessarily inconsistent with

---

[108] A.R. 656.

[109] A.R. 661.

[110] A.R. 661; *See also e.g.,* A.R. 492, 519, 523, 529, 532, 535, 538–39, 550–52, 571–72, 621.

[111] A.R. 661.

[112] *Vargas v. Lambert,* 159 F.3d 1161, 164 n.2 (9th Cir. 1998).

[113] *See Harris v. Berryhill,* 738 Fed. App'x. 529, 530–31 (9th Cir. 2018) (unpublished) ("Because the GAF scale does not have a direct correlation to the severity requirements in the mental health listings and [plaintiff's] GAF scores were not accompanied by explanations of the scores' impact on [plaintiff's] functional limitations, the ALJ was not required to discuss the scores."). Unpublished orders of the U.S. Court of Appeals for the Ninth Circuit issued on or after January 1, 2007, may be cited to by the courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1 and 9th Cir. R. 36-3.

Plaintiff's RFC, given the other evidence in the record suggesting Plaintiff retained the ability to work.[114]  And, the majority of Plaintiff's GAF scores appear to be between 52–70, reflecting at most, a moderate difficulty in social functioning.[115]

"Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."[116]  Here, the ALJ's discounting of Dr. Kushner's opinion that Plaintiff's social functioning was markedly limited, based on the longitudinal record, is a specific and legitimate reason supported by substantial evidence.

### 5.    Lack of support for assessments

As noted by the ALJ, Dr. Kushner provided very little explanation in support of his opinion that Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the work setting, was moderately to markedly impaired.[117]  He provided no explanation for his opinions that Plaintiff's ability to maintain

---

[114] *See e.g., Daniel S.O. v. Comm'r of Soc. Sec.,* No. C19-6203-MLP, 2020 WL 2850565, at *2–3 (W.D. Wash. June 2, 2020) (finding that unexplained GAF scores alone were not necessarily inconsistent with the ALJ's RFC assessment reflecting a limitation of performing simple, routine, unskilled tasks, with only superficial contact with the public); *Zerba v. Comm'r of Soc. Sec. Admin.,* 279 Fed. App'x. 438, 439 (9th Cir. 2008) (unpublished) (finding a GAF score of 45 to be not necessarily inconsistent with a finding that a plaintiff's depression was not severe); *Lehman v. Berryhill,* No. 6:16-cv-00920-PK, 2017 WL 4415753, at *11 (D.Or. Jul. 25, 2017) (finding no error where the ALJ failed to discuss a GAF score of 45 because other evidence in the record suggested Plaintiff retained the ability to work).

[115] *Garrison,* 759 F.3d at 1002 n.4 ("According to the DSM-IV, a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'  A GAF score between 51 to 60 describes 'moderate symptoms' or [']any moderate difficulty in social, occupational, or school functioning.'").

[116] *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

[117] A.R. 467, 470.

Case No. 3:23-cv-00111-JMK, *Michelle B. v. O'Malley*
Decision and Order
Page 21 of 38

attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks under supervision, was "moderate to at times marked[ly]" limited.[118]

Therefore, the ALJ's finding that Dr. Kushner's marked limitations were not explained or supported is a specific and legitimate reason for discounting Dr. Kushner's opinions.

### 6. Internal inconsistences and inconsistency with the record

An ALJ may properly reject a medical opinion if it is internally inconsistent.[119] To the extent Dr. Kushner's limitations on social interaction exceeded the RFC, the ALJ reasonably interpreted Dr. Kushner's moderate to marked limitations as conflicting with the results of his own mental status examination. For example, although Dr. Kushner opined that Plaintiff was moderately to markedly limited in relating adequately with others and appropriately dealing with stress, he noted that upon mental status examination, Plaintiff's "[m]anner of relating, social skills, and overall presentation were adequate."[120]

The ALJ also reasonably found that Dr. Kushner's opinion regarding Plaintiff's "moderate to at times marked" difficulty maintaining attention and concentration and learning new tasks was not consistent with his other opinions that Plaintiff was only mildly limited in understanding, remembering, and carrying out simple instructions and in making judgments regarding simple work-related decisions, as well as his opinion that Plaintiff

---

[118] A.R. 467.

[119] *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies within and between physicians' reports constitutes relevant evidence.); *see also Tommasetti,* 533 F.3d at 1041 (a provider's opinion may be rejected due to an incongruity between a provider's medical questionnaire responses and her medical records).

[120] A.R. 466–67.

was moderately limited in understanding, remembering, and carrying out complex instructions and in making judgments regarding complex work-related decisions.[121]

Moreover, Dr. Kushner's conclusion that Plaintiff would have difficulty interacting appropriately with the public is addressed in the RFC by limiting Plaintiff to occasional interaction with the public.[122] The RFC also addressed Dr. Kushner's conclusion that Plaintiff had difficulties maintaining attention and concentration, learning new tasks, and performing complex tasks under supervision by limiting Plaintiff to remembering, understanding, and carrying out only simple instructions.[123]

In sum, the ALJ cited specific and legitimate reasons for discounting Dr. Kushner's opinion and accounting only for mild to moderate mental limitations in the RFC.

## B.    Plaintiff's Subjective Symptom Testimony and Reports

The Court interprets Plaintiff's opening brief as asserting that the ALJ failed to articulate specific, clear, and convincing reasons for rejecting her testimony. Specifically, Plaintiff contends that her use of public transportation was limited to "scheduled doctor's appointments," with a "trusted person," and "not for joy or leisure." She also asserts that "[i]t is consistently noted throughout her record, that she show(s) signs of psychiatric

---

[121] A.R. 661–62.

[122] A.R. 657.

[123] A.R. 657. *See Withrow v. Colvin,* 672 Fed. Appx. 748, 749 (9th Cir. 2017) (unpublished) ("[T]his court has upheld determinations that claimants with moderate mental limitations are capable of doing simple unskilled work.") (citing *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.2d 685, 690 (9th Cir. 2009) (upholding a denial of benefits where the ALJ found that a claimant with "moderate restrictions of his capacity to concentrate, interact with the public, and carry out detailed work instructions" was not disabled)); *Stubbs-Danielson v. Astrue,* 539 F.2d 1169, 1173–74 (9th Cir. 2008) (the ALJ's finding of moderate mental limitations was consistent with an RFC for simple, routine, and repetitive work).

problems, which should substantiate her symptoms to SSA."[124]  The Commissioner counters that the ALJ "reasonably discounted Plaintiff's allegations because they conflicted with the treatment record."[125]

Plaintiff appeared and testified at two hearings before two different ALJs.  In the first hearing, Plaintiff appeared and testified without representation before the assigned ALJ in New York, New York, on March 14, 2013.  She testified that she lived with her three children ages five, six, and twelve at a friend's apartment in Manhattan.  She testified that she moved from California to New York "just to live with a friend to help me out with my children."  She testified that she was unable to take care of her children because of panic attacks and depression and that her oldest child and friend took care of the household chores, cooking, and grocery shopping.  Plaintiff testified that she was taking Lorazepam[126] and Klonopin,[127] but that she did not see a doctor regularly and had not been hospitalized for depression.  She testified that she had seen a psychologist three times after arriving in New York City in August 2012.  She stated that she did not get dressed every day and showered or bathed once or twice a week.  She stated that she took public transportation to the hearing and that she took the subway every so often.[128]

---

[124] Docket 7 at 10.

[125] Docket 12 at 2–5.

[126] Lorazepam is used to treat anxiety disorders.  *See* https://www.mayoclinic.org/drugs-supplements/lorazepam-oral-route/description/drg-20072296.

[127] Klonopin is used to treat panic attacks.  *See* https://www.webmd.com/drugs/2/drug-920-6006/klonopin-oral/clonazepam-oral/details.

[128] A.R. 20–35.

After stipulated remand of the ALJ's unfavorable decision in the U.S. District Court for the Southern District of New York, Plaintiff appeared and testified with representation before the assigned ALJ in New York, New York, on January 26, 2016.  She testified that she moved to New York City in 2012 from Los Angeles, California.  She testified that she worked as a customer service representative at call centers over a period of 15 years.  Plaintiff testified that her last job was as a home health aide in 2009.  She stated that her panic attacks began in 2008–2009 and she received outpatient treatment at UCLA Hospital at that time.  She indicated the medications prescribed to her by UCLA Hospital did not help and she stopped treatment on her own.  She testified that she attended psychotherapy for one year, stopped attending, resumed therapy approximately three years later in New York in 2013, and was still being treated for panic attacks at the time of the hearing.  Plaintiff stated that therapy and medication did not help, but that her therapist and psychiatrist suggested she continue to take medication and attend therapy.[129]

Plaintiff indicated that she had been living with two different friends over a period of six years in New York with her three children, ages eight, nine, and fifteen.  She testified that she stayed home while the children were at school and that her friend and oldest daughter took care of the grocery shopping, cooking, cleaning, and laundry.  She reported having panic attacks almost every day for about 20 minutes and that she could have more than one panic attack per day.  She also testified that her panic attacks went away each

---

[129] A.R. 741–49.

time after taking an Atarax[130] pill. However, Plaintiff stated that she was depressed every day for most of the day and that her previous Effexor[131] and current Zoloft[132] prescriptions did not help her. She testified that she had lost weight over the past two years, she did not sleep well, did not get dressed every day, had low energy, and could not focus or concentrate for long. She testified that she did not pick up her children from school and did not help with homework. Plaintiff stated that she no longer enjoyed activities that she used to enjoy and had no friends except the friend that she lived with at the time of the hearing.[133]

### 1.   Legal standards

An ALJ's assessment of a claimant's symptoms has two steps.[134] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[135] In the first step, the claimant need not show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she

---

[130] Atarax is used to help control anxiety and tension caused by nervous and emotional conditions. *See* https://www.mayoclinic.org/drugs-supplements/hydroxyzine-oral-route/description/drg-20311434.

[131] Effexor is used to treat depression, general anxiety disorder, social anxiety disorder, and panic disorder. *See* https://www.mayoclinic.org/drugs-supplements/venlafaxine-oral-route/description/drg-20067379.

[132] Zoloft is used to treat depression, obsessive-compulsive disorder, panic disorder, premenstrual dysphoric disorder, posttraumatic stress disorder, and social anxiety disorder. *See* https://www.mayoclinic.org/drugs-supplements/sertraline-oral-route/description/drg-20065940.

[133] A.R. 749–66.

[134] *Trevizo,* 871 F.3d at 678 (9th Cir. 2017), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

[135] *Id.* (quoting *Garrison v. Colvin,* 759 F.3d 995, 1014–15 (9th Cir. 2014)).

need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[136]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. This standard is "the most demanding required in Social Security cases."[137]  Yet, this does not mean an ALJ is required to "simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case."[138]

In this case, the ALJ determined that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. The ALJ did not determine that Plaintiff was malingering.[139]

Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, he was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations.  The ALJ provided the

---

[136] *Garrison,* 759 F.3d at 1014 (internal citations and quotations omitted).

[137] *Trevizo,* 871 F.3d at 678.

[138] *Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022).

[139] A.R. 658–60.

following reasons:  (1) Plaintiff's treatment notes indicate that medication was effective for her panic attacks, anxiety, and depression; (2) Plaintiff's providers recorded generally unremarkable mental status findings; (3) the absence of medical evidence after February 2016 "suggests that [Plaintiff] has obtained little to no treatment because her symptoms remained controlled with medication"; and (4) Plaintiff's activities are not consistent with the level of impairment claimed by Plaintiff.[140]

### 2. Improvement with treatment

An ALJ may discount a claimant's mental health symptom testimony based on improvement with treatment.[141]  However, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms."[142]  Here, the ALJ acknowledged Plaintiff's history of problems with depression and anxiety, including panic attacks, and Plaintiff's use of medication and therapy to treat them.[143]

The Court's review of the record reveals that Plaintiff suffered from symptoms of her depression, anxiety, and panic attacks between January 2011 and February 2016. The record includes three visits to the emergency room for panic attacks, use of

---

[140] A.R. 658–60.

[141] *See Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1))).

[142] *Garrison,* 759 F.3d at 1017 (internal citation omitted).

[143] A.R. 659–60.

prescription medications, and limited psychotherapy.[144]  However, the Court's review of

the treatment notes also reveals that when Plaintiff engaged in treatment, she often

reported that it was helpful.[145]  Moreover, the treatment Plaintiff engaged in before

February 2016 was sporadic.[146]  Plaintiff started and stopped treatment after only a few

visits or after a few months, often with large gaps of time between her re-initiation of

treatment.[147]

---

[144] *See e.g.,* A.R. 203–11 (panic attack, August 8, 2011), 217–22 (panic attack, July 12, 2011), 234–38 (panic attack, January 5, 2011), 460 (reported depression and anxiety attacks), 488–96 (presented with symptoms of depression and anxiety), 502–53 (medication follow up), 556–642 (behavioral therapy and medication follow up).

[145] *See e.g.,* A.R. 489 (reported marital counseling was helping in learning how to better deal with her children), 494 (reported being in therapy off and on and that it was somewhat helpful, but denied ever having taken medication for symptoms), 496 (provider noted "some improvement" starting medications), 502 (reported doing better on Zoloft, feels calmer and less depressed), 505–06 (reported improvement with change in medication), 508 (reported benefit at start of the day from medication, but motivation wears off as the day progresses), 526 (medication well tolerated), 530 (compliance with medications and feeling calmer and not depressed), 533 (continue current medications, reported feeling less depressed), 535 (reported compliance with medication and feeling less depressed), 627 (reported compliance with medication and no complaints at the time), 630 (compliance with medications and feeling less depressed).

[146] *Abrahamson v. Saul,* 818 Fed. Appx. 718, 721 (9th Cir. 2020) (unpublished) (sporadic adherence to prescribed treatment is a clear and convincing reason to conclude a plaintiff's testimony overstated his symptoms and limitations).

[147] *See e.g.,* A.R. 449–50 (treatment ceased because unable to contact claimant), 456 (based on newness of treatment, provider was unable to provide recommendations other than to continue with individual treatment and monthly medication management), 459–62 (provider reported that Plaintiff attended only four sessions and declined to provide a functional assessment), 488 ("Client stopped coming before any progress was made."), 497–98 (provider declined to provide a functional assessment because she had not seen Plaintiff long enough), 541 (reported taking Lexapro and Lorazepam five months previous and current increase in depression and anxiety symptoms), 546 (poor attendance; Plaintiff requested termination of services "because she had too many conflicting appointments."), 595 (reported doing better on Zoloft, less depressed, and less anhedonic with improved concentration and energy level), 598 (reported doing better on Zoloft; felt calmer, less depressed, and less anhedonic with improved concentration and energy level; still had daily panic attacks which were mostly relieved by Atarax), 620 (re-initiated treatment; reported "had not returned because she had enough medication until last week.").

### 3.    Unremarkable mental status findings

To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.[148]  Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.[149]  Moreover, an ALJ may properly discredit a claimant's testimony based on inconsistencies with relatively mild mental status examinations.[150]

Here, the ALJ cited to examples of providers recording "generally unremarkable mental status findings."[151]  While Plaintiff regularly demonstrated a depressed mood and regularly reported panic attacks, the treatment notes also generally show unremarkable mental status findings.[152]  Therefore, the ALJ's discounting of Plaintiff's symptom testimony based on unremarkable mental status findings is specific, clear, and convincing.

### 4.    No record of treatment after February 2016

While a lack of objective medical evidence cannot be the sole reason for rejecting a claimant's symptom testimony, it is a proper factor that the ALJ may consider in weighing

---

[148] *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599–600 (9th Cir. 1999).

[149] *Burch,* 400 F.3d at 680-81.

[150] *See Cramer v. Berryhill,* 706 Fed. App'x. 385, 386 (9th Cir. 2017); *Loewen v. Berryhill,* 707 F. App'x. 907, 908 (9th Cir. 2017) (holding that the ALJ met the clear and convincing reasons standard, noting that the claimant's testimony was not consistent with her treatment record and performance on exams, and explaining that ALJs "can consider a lack of supporting medical evidence.").

[151] A.R. 659–60.

[152] *See e.g.,* A.R. 492, 519, 523, 529, 532, 535, 538, 550–52, 571–72, 621.

that testimony.[153]  As discussed above, the last medical evidence submitted in Plaintiff's record is from February 2016.  And, after remand, Plaintiff elected not to appear and testify at a new hearing and elected not to submit any new medical evidence.[154]  In this case, the ALJ's rejection of Plaintiff's symptom testimony based on a lack of medical evidence after 2016 is a rational interpretation and should be upheld.[155]

### 5.    Daily activities

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."[156]  Here, the ALJ discounted Plaintiff's symptom testimony based on Plaintiff's ability to use public transportation as inconsistent with Plaintiff's "allegation of social isolation, agoraphobia, and difficulty being in public places."[157]  The ALJ cited to Plaintiff's report to Dr. Kushner that she was able to take public transportation.[158]  The ALJ also cited to Plaintiff's report to a provider that she "forced herself the other day to go out with her children" and stated that she "just rode the

---

[153] *See Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); *Burch,* 400 F.3d at 680–81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis . . ..").

[154] A.R. 653, 826–27.

[155] *See Burch,* 400 F.3d 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *see also Smart,* 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince.").

[156] *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014).

[157] A.R. 660.

[158] A.R. 467.

Case No. 3:23-cv-00111-JMK, *Michelle B. v. O'Malley*
Decision and Order
Page 31 of 38

bus back and forth."[159]  These two vague examples cited by the ALJ are not sufficient reasons for discounting of Plaintiff's testimony based on inconsistent daily activities. However, as set forth above, the ALJ provided other clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective testimony.  Therefore, any error in relying on Plaintiff's ability to take public transportation was harmless.[160]

In sum, the ALJ did not err by omitting the full extent of Plaintiff's subjective testimony in the RFC.

## C.    Substantial Gainful Activity in 2017 and 2019

Plaintiff alleges the ALJ erred in finding that Plaintiff engaged in substantial gainful activity in 2017 and 2019.  She asserts that she has not worked since 2011.[161]  At her hearing in January 2016, Plaintiff testified that her wallet was stolen and that someone else was using her social security card, but she did not have a copy of the police report.[162] She also asserts that, on March 9, 2016, the SSA mailed the ALJ's unfavorable decision to an incorrect address and the paperwork contained her social security number.[163]  The

---

[159] A.R. 541–42.

[160] *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162–63 (9th Cir. 2008) (finding that when the ALJ errs in relying on one of several reasons in support of an adverse credibility determination, but such error did not affect the ALJ's decision, the error is harmless "because the ALJ's remaining reasoning *and ultimate credibility determination* were adequately supported by substantial evidence in the record.") (internal citation omitted).

[161] Docket 7 at 12–13.  Plaintiff cites to a letter written by a family friend indicating that Plaintiff had not worked since 2011.  A.R. 947.  Plaintiff's previous attorney, Ruth Axelrod, represented that Plaintiff had not worked since 2009 and that Plaintiff was "taking steps to have all earnings after 2009 removed from her record."  A.R. 451.

[162] A.R. 745–46.

[163] Docket 7 at 13; *see* A.R. 314.

Commissioner counters that the ALJ did not end the inquiry at step one in the disability evaluation, therefore, the ALJ's finding regarding substantial gainful activity was "inconsequential to the ultimate nondisability determination."[164]

At the first step in the ALJ's five-step disability analysis, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. If so, the claimant is not disabled, and the inquiry ends.[165] However, there is also a duration requirement of 12 months.[166] This means that an individual is considered disabled if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *which has lasted or can be expected to last for a continuous period of not less than 12 months*[.]"[167]

Here, the ALJ found that Plaintiff engaged in substantial gainful activity in 2017 and 2019, based on certified earnings records.[168] The ALJ also found that there were continuous 12-month periods without substantial gainful activity during the alleged disability period.[169] Consequently, the ALJ continued through the additional steps in the

---

[164] Docket 12 at 2 n.1 (quoting *Molina v. Astrue,* 674 F.3d 1104, 1117 (9th Cir. 2012)).

[165] 20 C.F.R. § 404.1520(a)(4)(i).

[166] *See Barnhart v. Walton,* 535 U.S. 212, 219 (2002).

[167] 42 U.S.C. § 423(d)(1)(A) (effective Dec. 22, 2020) (Title II) (emphasis added).

[168] A.R. 655–56, 918–25. *See* 20 C.F.R. § 404.1572(c), 416.972(c).

[169] A.R. 656.

disability evaluation process, and only after analyzing all five steps did the ALJ determine that Plaintiff was not disabled.[170]

In sum, the ALJ did not err at step one of the sequential disability evaluation process by finding that Plaintiff engaged in substantial gainful activity in 2017 and 2019.

## D.    Steps Four and Five and Social Security Ruling 85-15

Plaintiff asserts that the ALJ erred by finding that the transferability of job skills was not an issue because Plaintiff had no past relevant work.  Plaintiff states that she has past relevant work as a customer service representative and a home health aide within 15 years of her SSI and DIB applications.[171]  She asserts that the ALJ did not consider Social Security Ruling ("SSR") 85-15.[172]  She states that her functional limitations render her unable to follow simple instructions and work with the general public.  She also states that, due to her diagnosis of agoraphobia, "it is evident that she would not be able to deal with the pressures of the expected tasks in a regular work day."[173]

The Commissioner counters that the ALJ did not end the inquiry at step four in the disability evaluation, therefore, the ALJ's findings were "inconsequential to the ultimate nondisability determination."[174]  The Commissioner does not address Plaintiff's assertions regarding Social Security Ruling 85-15.[175]

---

[170] A.R. 662–63.

[171] Docket 7 at 10.

[172] Docket 7 at 9.

[173] Docket 7 at 11.

[174] Docket 12 at 2 n.1.

[175] Docket 12.

Once a claimant proves she cannot return to her former work, the ALJ must show that there are jobs in the national economy that the claimant can perform.[176]  Here, Plaintiff testified that she worked as a customer service representative "over a period of 15 years."[177]  She testified that she had also worked as a receptionist, and as an in-home caretaker during the last 15 years.[178]  However, the ALJ found that Plaintiff had no relevant past work.[179]  The ALJ then proceeded to step five in the disability evaluation process.  Assuming Plaintiff could not perform any past work, the ALJ concluded that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.[180]  Because the ALJ did not end the inquiry at step four and proceeded to the last step in the disability evaluation process, any error regarding whether Plaintiff's work as a customer service representative or home health aide should have been considered past relevant work was harmless error.[181]

---

[176] *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985).

[177] A.R. 336.

[178] A.R. 336–37.

[179] A.R. 662.  Although Plaintiff asserts that she has past relevant work as customer service representative and home health aide, the ALJ only considers work experience done within the last 15 years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity.  *See* 20 C.F.R. §§ 404.1565(a), 416.965(a).  In this case, the previous ALJ concluded that Plaintiff's earnings record showed no definite evidence that she engaged in work as a customer service representative or a home health aide at substantial and gainful levels.  A.R. 324.

[180] A.R. 662.

[181] *See Tommasetti v. Astrue,* 533 F.3d at 1044 ("[A]lthough the ALJ erred at step four in finding that Tommasetti could perform his past work, this error was harmless because the ALJ properly concluded as an alternative at step five that he could perform work in the national and regional economies.").

Additionally, the ALJ stated that he considered section 204.00 of the Medical-Vocational Guidelines (the "Grids") and Social Security Ruling ("SSR") 85-15 in his step five determination.[182]

The relevant portion of SSR 85-15 states:

"Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."[183]

SSR 85-15 also states that individuals suffering from mental illness may "have difficulty accommodating to the demands of work and work-like settings[,]" resulting in "highly individualized" abilities to cope with stress in the workplace and requiring "thoroughness in evaluation on an individualized basis."[184]

---

[182] A.R. 662–63.

[183] TITLES II AND XVI: CAPABILITY TO DO OTHER WORK — THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are "binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases[.]").

[184] *Id.,* at *5.

Because Plaintiff has alleged only non-exertional impairments, the ALJ was required to consider SSR 85-15.[185]  In this case, the ALJ concluded that Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations.  However, these limitations have little or no effect on the occupational base of unskilled worker at all exertional levels."[186]

The ALJ included Plaintiff's nonexertional limitations in the RFC.  Specifically, the ALJ found that Plaintiff could not tolerate more than occasional interaction with the public, but Plaintiff was able to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis, including the ability to remember, understand, and carry out only simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and manage changes in a routine work setting.[187]  Moreover, because the ALJ properly discounted the portion of Dr. Kushner's opinion that concluded Plaintiff was "at times" markedly limited in social function and properly discounted the full extent of Plaintiff's reported symptoms, the ALJ reasonably determined that Plaintiff's mental health limitations had little or no effect on the occupational base of an unskilled worker at all exertional levels.

In sum, the ALJ adequately considered Plaintiff's non-exertional impairments under SSR 85-15 and the decision is supported by substantial evidence in the record.

---

[185] *Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir. 1995) (SSR 85-15 was issued to clarify "policies applicable in cases involving the evaluation of solely non-exertional impairments.").

[186] A.R. 662.

[187] A.R. 657.  *See also* SSR 85-16 ("Consideration of these factors [ability to understand, carry out and remember instructions; respond appropriately to supervision, coworkers and customary work pressures] is required for the proper evaluation of the severity of mental impairments.").

## V.    ORDER

The Court, having carefully reviewed the administrative record and the ALJ's findings, concludes that the ALJ's determinations are free from legal error and supported by substantial evidence.  Accordingly, IT IS HEREBY ORDERED:

1.      The Clerk's Office is directed to substitute Martin J. O'Malley as Defendant and update the docket sheet.

2.      Plaintiff's request for relief at Docket 7 and Motion for Summary Judgment at Docket 8, are **DENIED**.

3.      The Commissioner's final decision is **AFFIRMED**.

4.      Any pending motions are **DENIED** as moot.

5.      The Clerk of this Court shall enter judgment in favor of Defendant and close this case accordingly.

DATED this 16th day of April, 2024, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE